991 So.2d 957 (2008)
Ernest Harold REMOR, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1371.
District Court of Appeal of Florida, Fourth District.
September 17, 2008.
Rehearing Denied October 20, 2008.
*958 Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
We hold that the trial court erred in failing to grant the defendant's motions for judgment of acquittal on the charges of attempted burglary of a structure and possession of burglary tools. The evidence presented by the state was entirely circumstantial and did not rebut a reasonable hypothesis of innocence. We affirm the conviction for resisting arrest without violence.
On September 4, 2004, Indian River County was under a curfew because of an impending hurricane. At approximately 4:15 a.m., Lt. Frank Divincenzo of the Vero Beach Police Department was parked in the Modernage Furniture parking lot. In his rearview mirror, he saw the shadows of two people moving, so he requested a marked unit to respond.
K-9 Officer David Puscher arrived and spotted two white males walking briskly with their hands covering their faces. When Officer Puscher drove alongside the men and rolled down his window, the men took off running. The officer gave chase, cut Remor off and warned him to stop or he would release his dog. Remor kept running, but Puscher eventually caught him.
When Remor was apprehended, he was wearing dark clothing, gloves, a shirt wrapped around his neck, and a miner's light, similar to what coal miners wear on their heads. He had no tools on his person. An inventory of appellant's car revealed an empty black drill case, duct tape, and a pair of pliers. About five feet from appellant's vehicle, police found a drill case wrapper. No drill was ever found.
After taking Remor and his companion into custody, the police walked the two men up to the shopping mall to get out of the rain. They noticed two wooden boards missing from the window of Sound Frontier, a store in the mall; the boards were on the ground with some screws still in them. There was no evidence of shattered glass, pry marks, or tampering with the locks on the door. Remor's car was parked about three football fields away *959 from the store. Prior to the storm, the owners of Sound Frontier had boarded up and taken everything of value with them in the company van.
When questioned about their presence, Remor and his cohort stated that they were in the area working for a utility company to help restore power affected by the hurricane. Neither provided any form of identification. Remor stated that they planned to sleep in their vehicle and had walked towards the storefront to get a better look at the storm.
Leann Ottuso testified that Remor and his companion, along with a second work van, had been dispatched to the hurricane area by Energy Concepts, a business which sent repair crews to disaster areas. Their assignment was to meet with local power and cable companies and obtain jobs after the storm. She said that the company sent the two men to the eastern part of the county, near the power plant, while the second work van was dispatched to the west. Remor's vehicle did not have tools because the company equipment had been loaded into the second work van. Remor was authorized to open up an account at a local store if he needed supplies.
At the conclusion of the state's case, Remor moved for a judgment of acquittal on all charges. As to the attempted burglary of a structure, Remor contended that no evidence placed him at Sound Frontier or connected him to the window boards that had been removed. As to the possession of burglary tools, Remor argued that the state had not established a burglary, that he was in the area for a legitimate purpose, and that the miner's light and gloves in his possession were not burglary tools. The trial court denied the motions.
The jury convicted Remor as charged of the two burglary related charges and resisting an officer without violence.
The trial court erred in failing to grant a judgment of acquittal on the charge of attempted burglary of a structure. A motion for judgment of acquittal challenges the legal sufficiency of the evidence. See Span v. State, 732 So.2d 1196, 1197 (Fla. 4th DCA 1999). "Legal sufficiency means that the state has adduced a bundle of evidence that, if believed by the jury, would constitute proof beyond a reasonable doubt on every element of the offense charged." State v. Smyly, 646 So.2d 238, 241 (Fla. 4th DCA 1994). Generally, "[t]he courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Lynch v. State, 293 So.2d 44, 45 (Fla.1974). There was no direct evidence linking Remor to the removed window boards at Sound Frontier. Where a verdict is based wholly on circumstantial evidence, a special standard of review is applicable. See State v. Law, 559 So.2d 187, 188 (Fla.1989). "A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypotheses except that of guilt." Id. As the supreme court has written,
[i]t is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in light most favorable to the state. The state is not required to `rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury's duty to determine *960 whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
Id. at 189 (citations omitted); see also White v. State, 973 So.2d 638 (Fla. 4th DCA 2008) (quoting Sanders v. State, 344 So.2d 876, 876-77 (Fla. 4th DCA 1977) ("circumstantial evidence must be so strong and convincing as to exclude every reasonable hypothesis except the defendants' guilt and must exclude any reasonable hypothesis of the defendants' innocence")). Evidence which furnishes nothing more than a suspicion that the defendant committed the crime is not sufficient to uphold a conviction. See Davis v. State, 436 So.2d 196, 198 (Fla. 4th DCA 1983).
Presence near the scene of a burglary, without more, is not enough to support a burglary conviction. Garcia v. State, 899 So.2d 447, 450 (Fla. 4th DCA 2005), presented facts more suggestive of guilt than this case, yet we held that the state "failed to introduce competent evidence which is inconsistent with the defendant's theory of innocence." Id. at 450. In Garcia, the police responded rapidly to the burglary victim's residence and issued a BOLO for a van believed to have been used in connection with the burglary. Id. at 448. Garcia was a passenger in the van, which was stopped within ten minutes of the BOLO. Id. Some stolen property was found in the van. Id. at 450. The state argued that the defendant's presence in the van, coupled with his proximity to the stolen property, constituted sufficient proof of his intent to participate in a burglary. Garcia, 899 So.2d at 450. However, this court found that such evidence, standing alone, "[did] not preclude every reasonable inference that [defendant] did not intend to participate" in the crime. Id. We pointed out that "[m]ere knowledge that an offense is being committed and mere presence at the scene of the crime are insufficient to establish participation in the offense." Id.
Similarly, in Beckford v. State, we held that a defendant's presence near the scene of a burglary was insufficient to support a conviction, where the circumstantial evidence was not inconsistent with the reasonable hypothesis that the defendant was in the area for an innocent reason. 964 So.2d 793 (Fla. 4th DCA 2007). There, a witness heard a burglar alarm go off at his neighbor's house. Id. at 794. The witness saw the defendant on a cell phone in the driveway of the house. Id. When the witness confronted the defendant, he "ignored him and just kept walking at a faster pace." Id. The defendant got into a pick-up truck and drove away at a fast speed. Id. at 795. No physical evidence connected the defendant to an attempted break-in at the rear of the house. Beckford, 964 So.2d at 796. We held that the state's evidence was not inconsistent with the reasonable hypothesis that the defendant was legitimately in the area when first seen by the neighbor. Id.
Applying Beckford and Garcia to this case, we hold that the state's circumstantial evidence is insufficient to prove that Remor attempted a burglary. Appellant's reasonable hypothesis of innocence is that his employer sent him to a hurricane zone to seek work during the clean-up process; that he was in the shopping plaza to ride out the storm when he encountered the police officer; and that he ran away from the police because the co-defendant ran. His claims are supported in part by the testimony of his employer. No physical evidence connected Remor to the two boards removed from the store window. There was no evidence as to when the boards were removed. His car was parked 300 yards away. Remor's flight from the police is equivocal, since a plausible *961 explanation is that the flight inferred consciousness of a curfew violation, and not a guilty mind over an attempted burglary. See Owen v. State, 432 So.2d 579, 581 (Fla. 2d DCA 1983) (where court observed that "[e]vidence that a suspect is present at the scene of a crime and flees after it has been committed is insufficient to exclude a reasonable hypothesis of innocence"); see also Powell v. State, 908 So.2d 1185, 1187 (Fla. 2d DCA 2005) (court wrote that "[e]vidence of flight is relevant to infer consciousness of guilt where there is a sufficient nexus between flight and the crime with which a defendant is charged.").
Appellant next contends that the trial court erred in denying his motion for judgment of acquittal on the charge of possession of burglary tools. We agree because the gloves and shirt are not burglary "tools" and there was no evidence that Remor used or intended to use the miner's light to commit a burglary.
Section 810.06, Florida Statutes (2007) states that
[w]hoever has in his or her possession any tool, machine, or implement with intent to use the same, or allow the same to be used, to commit any burglary or trespass shall be guilty of a felony of the third degree.
To obtain a conviction for possession of burglary tools, the State is required to establish "not merely that accused intended to commit burglary or trespass while those tools were in his possession, but that the accused actually intended to use those tools to perpetrate the crime." Thomas v. State, 531 So.2d 708, 709 (Fla.1988). In Thomas, the Supreme Court held that the statute required this quantum of proof:
[T]he specific intent to commit a burglary or trespass using tools, instruments or machines in the defendant's possession or control exists when he or she engages in or causes some overt act toward the commission of the burglary or trespass, which goes beyond merely thinking or talking about it. The overt act necessary to prove intent need not be limited to the actual use of an item in committing the trespass or burglary, but need only manifest the specific criminal intent.
Id. at 710; see Latimore v. State, 753 So.2d 690 (Fla. 4th DCA 2000)(holding that a conviction for possession of burglary tools should be reversed where there was no overt act that constituted use or manifested an intent to use a flashlight during a burglary).
Whether an implement constitutes a burglary tool is determined from the totality of the circumstances. Often, characterization of a device as a burglary tool comes from the way the device is used in a burglary. Thus, in Brooks v. State, a defendant fled from a stolen car and dropped a tire tool; the tool had been used to smash the steering column, dashboard, glove box and to remove lug nuts and hubcaps. 605 So.2d 522, 523 (Fla. 4th DCA 1992). We held that the jury in Brooks could have properly concluded that the defendant used the tire tool to assist in the burglary.
In other cases, the surrounding circumstances indicated that a defendant "was preparing to use the tool to commit a burglary." See Thomas, 531 So.2d at 710. For example, in Thomas, a confidential informant told the police that the defendant had committed a number of burglaries in a particular neighborhood. Id. at 709. During surveillance, police witnessed the defendant jump over a fence and run away. Id. At the time, defendant was was wearing a pair of socks over his hands and carrying a screwdriver. Id. When caught, the defendant admitted that he had entered *962 the area to commit a burglary. Id. The Supreme Court held that these facts amounted to sufficient evidence of criminal intent with respect to the screwdriver to submit the case to a jury. Thomas, 531 So.2d at 711.
Here, there was no evidence that Remor performed any overt act "which either constitutes use or manifests an intent to use" the miner's light during a burglary. See Latimore v. State, 753 So.2d 690, 691 (Fla. 4th DCA 2000). In Latimore, the defendant was seen trying to remove a radio from the dashboard of a pick-up truck. Id. After his arrest, the police found a 7-inch flashlight on his person. Id. We reversed a conviction of possession of burglary tools because the defendant never used the flashlight in furtherance of the burglary. Id. at 692. This case presents even less evidence of intent than Latimore, since there was nothing to connect Remor to the scene of the attempted burglary.
The gloves and shirt were items of clothing which cannot be classified as burglary tools, since they are not "objects which actually facilitate the breaking and entering of a dwelling," structure, or vehicle. See Green v. State, 604 So.2d 471, 473 (Fla.1992); T.H. v. State, 658 So.2d 1161 (Fla. 2d DCA 1995) (holding that socks are items of personal apparel and not burglary tools).
On the charge of resisting arrest without violence, the police had a reasonable suspicion to stop and detain Remor because he was in violation of a hurricane related curfew near a commercial area. See D.L.C. v. State, 298 So.2d 480, 481 (Fla. 1st DCA 1974) (McCord, J., concurring specially). "An individual may be guilty of unlawfully obstructing an officer if he flees while knowing the officer's intent to detain him and the officer is justified in stopping and detaining him." Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001); see also H.H. v. State, 775 So.2d 397 (Fla. 4th DCA 2000); J.R.P. v. State, 942 So.2d 452, 453-54 (Fla. 2d DCA 2006); V.L. v. State, 790 So.2d 1140 (Fla. 5th DCA 2001); S.G.K. v. State, 657 So.2d 1246 (Fla. 1st DCA 1995). Although a police officer and the prosecutor impermissibly commented on Remor's right to remain silent, we find those errors to be harmless beyond a reasonable doubt as to the charge of resisting arrest without violence.
We reverse the convictions for attempted burglary of a structure and possession of burglary tools and remand for the entry of judgments of acquittal. We affirm the conviction of resisting arrest without violence and remand for resentencing.
STONE and TAYLOR, JJ., concur.