*1101
 
 DAMOORGIAN, J.
 

 The Appellant, Christopher Stra-way, appeals his conviction for first degree felony murder. In this appeal, Straway argues that the trial court should have granted a judgment of acquittal on the grounds that the evidence against him was purely circumstantial and the State had failed to disprove all reasonable hypotheses of innocence.
 
 See Orme v. State,
 
 677 So.2d 258, 262 (Fla.1996). The standard for reviewing a trial court’s ruling on a motion for judgment of acquittal is de novo.
 
 Burkett v. State,
 
 992 So.2d 848, 851 (Fla. 4th DCA 2008). We affirm the conviction.
 

 The relevant facts are that the victim, J.A., was a two-year-old child. J.A.’s mother, Cheryl Aexander, was good friends with Straway and his wife, Heather Straway, and often sent J.A. to the Stra-ways’ home when she needed a babysitter. At about 8:30 p.m. on the night before his death, J.A. was dropped off at the Stra-ways’ home by his mother’s friend, Alex Guzman. J.A. stayed at the Straways’ home until he was taken to the hospital the following day. Straway was home with J.A. for the entire time. Heather Straway was at the home during some parts of that night and the following day.
 

 At 3:50 p.m. on the day of his death, Straway discovered that J.A. was not breathing. He called to Heather Straway, who ran to J.A. and shook him, trying to get his attention. The police were called and, along with emergency medical personnel, arrived at the Straways’ home to render assistance. J.A. was taken to the hospital where he passed away. An autopsy revealed severe external bruising on J.A.’s head, severe internal bleeding in his head, and non-fatal bruises on the rest of his body. The State’s expert, Dr. Bell, concluded that J.A. died from blunt force trauma to the head as a result of being beaten and that the injuries were recent. Dr. Bell also concluded that it was unlikely, considering the severity and number of injuries, that J.A. would have appeared normal days before he lost consciousness.
 

 In a recorded statement to the police, Straway stated that Alex Guzman dropped J.A. off at his house the night before J.A.’s death. Shortly thereafter, J.A. threw up on him. Straway cleaned J.A. in the shower, re-dressed him, and gave him Children’s Tylenol. He put J.A. in the room with his children to watch television. Straway stated that J.A. appeared not to be in pain, although earlier J.A. had fallen off the bed and hit his abdomen on a small table, resulting in a red mark about five inches long on his abdomen. The child showed no signs of distress. Both Stra-way and his wife cheeked on J.A. several times throughout the night. The next afternoon, J.A. went down for a nap. During his nap, Straway heard him coughing, checked on him, and discovered that he was not breathing.
 

 A motion for judgment of acquittal challenges the legal sufficiency of the evidence.
 
 Remor v. State,
 
 991 So.2d 957, 959 (Fla. 4th DCA 2008). For purposes of the motion, the defendant admits not only the facts adduced from the evidence, but also every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.
 
 Lynch v. State,
 
 293 So.2d 44, 45 (Fla.1974). However, “[a] special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence.”
 
 State v. Law,
 
 559 So.2d 187, 188 (Fla.1989). The Florida Supreme Court has provided the following explanation of this standard:
 

 It is the trial judge’s proper task to
 
 review
 
 the evidence to determine the presence or absence of competent evidence from which the jury could infer
 
 *1102
 
 guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. The state is not required to rebut conclusively every possible variation of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant’s theory of events. Once that threshold burden is met, it becomes the jury’s duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
 

 Id.
 
 at 189 (citations omitted).
 

 When faced with a motion for judgment of acquittal in a case where the evidence is circumstantial, the trial court must “determine whether there is [a] pri-ma facie inconsistency between (a) the evidence, viewed in the light most favorable to the State and (b) the defense theory or theories. If there is such inconsistency, then the question is for the finder of fact to resolve.” Orme, 677 So.2d at 262;
 
 see also Law,
 
 559 So.2d at 188.
 

 As his hypothesis of innocence, Straway contends that J.A.’s fatal injuries could have occurred while he was in the custody of other individuals. Straway argues that his hypothesis of innocence is entirely consistent with the evidence establishing that, during the two to three days preceding J.A.’s death, there were a number of people who had been alone with J.A., including J.A.’s mother, Alex Guzman, and the Straways’ young children. Straway contends that any one of these individuals could have inflicted the fatal wounds. He further argues that his hypothesis is supported by the testimony of Dr. Bell, who provided evidence that J.A.’s fatal injuries could have been inflicted during those time periods when the victim was with someone other than Straway.
 

 The State counters that all of the witnesses who had contact with J.A. during the relevant time frame testified that he did not have anything more than a bump on the head, a bump on the knee, and a mosquito bite before he went to the Stra-ways’ house the night before his death. The bump on J.A.’s head appeared as early as four days before his death, which makes it unlikely to have caused his death according to Dr. Bell’s testimony. Dr. Bell also testified that it was unlikely, with the severity and number of injuries that J.A. suffered, that he would appear normal during the one to two day period before he lost consciousness. Moreover, Heather Straway testified that J.A. was running around with the other children and did not appear injured on the morning of his death. From this testimony, the jury could have reasonably inferred that J.A. was not suffering from any head injuries prior to the time Heather left him alone with Straway on the day of his death, and that he suffered the fatal injuries within hours of him having stopped breathing— the period in time when he was alone with Straway. Thus, the State presented competent evidence to contradict Straway’s hypothesis of innocence.
 

 Contrary to Straway’s assertion, the State is not required to refute every possible variation of the events which could be inferred from the evidence.
 
 See Law,
 
 559 So.2d at 189. For example, the State was not required to contradict Stra-way’s theory that his young children might have caused J.A.’s fatal injuries because this theory is unreasonable in light of the children’s young ages and the severity of J.A.’s injuries. “In applying the law of circumstantial evidence under
 
 Law,
 
 a court should not concoct fictional hypotheses of innocence which contradict the defendant’s implausible version of the facts in evi
 
 *1103
 
 dence.”
 
 Parker v. State,
 
 795 So.2d 1096, 1100 (Fla. 4th DCA 2001).
 

 The present case is distinguishable from the First District Court of Appeal’s decision in
 
 Dixon v. State,
 
 691 So.2d 515 (Fla. 1st DCA 1997). In
 
 Dixon,
 
 the State presented evidence that the defendant’s infant daughter was brought to the hospital after she suddenly stopped breathing.
 
 Id.
 
 at 516. The child’s doctor testified that the child suffered from Shaken Baby Syndrome.
 
 Id.
 
 The defendant was charged with aggravated child abuse.
 
 Id.
 
 At trial, the State focused on the five to ten minute period during which the defendant was alone with the child when she stopped breathing.
 
 Id.
 
 The State’s expert witness, however, only narrowed the time frame for the child’s injuries to a period of four days before the child was taken to the hospital.
 
 Id.
 
 In addition, the defendant’s neighbor testified that the child was lethargic and had an enlarged head on the day before the child was brought to the hospital.
 
 Id.
 
 The child’s grandmother testified that the child was pale and cried excessively earlier in the day, and there was evidence that several people had access to or cared for the child during the four days preceding the defendant’s contact with the child.
 
 Id.
 
 Accordingly, the First District reversed the trial court’s denial of the judgment of acquittal, concluding that the circumstantial evidence was not inconsistent with the defendant’s theory that someone else had caused the child’s injuries.
 
 Id.
 

 In
 
 Dixon,
 
 there was clear evidence that the child suffered from symptoms of Shaken Baby Syndrome, specifically an enlarged head and lethargy, before the defendant was alone with her. In addition, the State focused on a very short time period, five to ten minutes, when the defendant was alone with the child. In contrast, J.A. did not have clear signs of severe head trauma before his contact with Straway. All of the State’s witnesses who had contact with J.A. during the day before his death testified that he behaved like a normal child. And, while J.A. did throw up the night before his death, and may have had a bump on his head, he did not exhibit the same kind of telltale signs of trauma as the child in
 
 Dixon.
 
 Finally, Straway had significantly more contact with J.A. than was the case in
 
 Dixon.
 
 Straway cared for J.A. for about twenty hours before his death, and was the only adult with him for most of that time.
 

 Fowler v. State,
 
 492 So.2d 1344 (Fla. 1st DCA 1986), the case on which Straway relies, is also distinguishable. In
 
 Fowler,
 
 the victim died from a gunshot wound and the defendant was convicted of armed robbery and felony murder.
 
 Id.
 
 at 1345. This Court reversed because the State did not provide evidence to rebut the defendant’s theory that the victim was shot accidentally when he and the defendant were engaged in a struggle for the gun.
 
 Id.
 
 at 1350-52 (noting that much of the evidence in the case supported the defendant’s version of the facts). Here, the State presented sufficient evidence, through the testimony of Dr. Bell, that J.A.’s head injuries were not accidental. In addition, other than the non-fatal bruise on J.A.’s stomach, Straway did not argue that J.A.’s injuries could have been accidental.
 

 We conclude that there is a prima facie inconsistency between the evidence, viewed in the light most favorable to the State, and Straway’s theory of innocence. The State presented evidence that, as a whole, rebuts Straway’s theory that someone else caused J.A.’s injuries. Thus, the State provided the jury with competent evidence from which it could exclude every reasonable hypothesis of innocence. Accordingly, the trial court did not err when it denied Straway’s motion for judgment of
 
 *1104
 
 acquittal. We therefore affirm his conviction for first degree felony murder.
 

 Affirmed.
 

 POLEN and STEVENSON, JJ., concur.