GERBER, J.
 

 The defendant below, Linwood Lewis, appeals his convictions for first degree murder and attempted robbery with a fee-arm. Lewis raises three issues: (1) an
 
 *756
 
 alleged inadequate Richardson
 
 [1]
 
 hearing; (2) an alleged improper denial of his motion for judgment of acquittal; and (8) an alleged erroneous jury instruction. Finding no error, we affirm.
 

 On January 20, 2007, Marc Thiebault went outside the front of his house to call in his son for the night. While Thiebault was outside, his wife Sylvia heard three gunshots. Sylvia ran outside, saw three young men running away, and found her husband on the ground, shot and bleeding. Three weeks later, Thiebault died from his wounds.
 

 The police initially arrested Leotis Lester as one of the men involved in the incident. After the police arrested Lester, their investigation led them to Lewis as one of the other men involved. The police interviewed Lewis. He denied any involvement.
 

 The police later interviewed Lewis again, and his story changed. Lewis said, on the night in question, Lester called and said to come with him and another man named Federick Tavares Lee. Lester said they were “fittin’ to go to handle something,” and wanted Lewis to “watch out” for Lester. During the car ride, Lester and Lee told Lewis that they were “fittin’ to go get this money,” and that Lewis would get some of the money. According to Lewis, Thiebault’s daughter told Lester there was a lot of money in a closet in her house. Later that night, the three men drove to Thiebault’s gated community. They jumped over the gate to get into the community. Lester and Lee had guns. The three men walked up to a house which Lester identified. They stood across the street for about ten to fifteen minutes. Lester and Lee told Lewis to “stand right here, just stand over here, man, just watch me so ain’t nothing happen, so nobody coming up, security.” Lewis stood in the grass on the side of the house, about ten feet from the other two men. Lewis heard Lester ask Lee what he wanted to do, and Lee responded that they would “run up on him.” Lewis understood that “running up on someone” meant robbing that person. Lewis saw a man walk out of the garage and all three men went towards him, with Lewis stopping by a truck in the driveway. Lester, with his gun drawn, approached the man. When the man tried to hit the gun away, Lester fired. Lewis ran back to the car with Lester and Lee, and they fled the scene.
 

 The state charged Lester and Lewis with first degree murder with a firearm and attempted robbery with a firearm, and the court below held separate trials for each defendant.
 
 [2]
 
 At Lewis’s trial, the state relied on Lewis’s statements to argue that he aided and abetted Lester and Lee in an attempt to rob the victim, and that, during the attempted robbery, Lester or Lee shot and killed the victim. Lewis’s defense was that, while he was present when Lester and Lee committed the crimes, he did not aid and abet their commission.
 

 During the state’s case, Thiebault’s wife Sylvia testified that, when she ran outside, she saw all three men standing very close together on her lawn before they ran away. Lewis objected, alleging that, during discovery, the state failed to disclose this statement. The prosecutor told Lewis’s counsel that neither the state nor the police ever had any such statement in their possession. Lewis requested the trial court to conduct a
 
 Richardson
 
 hearing. The trial court did not determine whether the state committed a discovery violation.
 
 *757
 
 Instead, the trial court asked Lewis, if the state committed a discovery violation, how he was prejudiced. Lewis responded that he would have called his investigators as witnesses and he would have recalled a state witness whose testimony was consistent with Sylvia’s statement. The trial court concluded that Lewis was not prejudiced. The court then proceeded with the trial.
 

 After the state rested, Lewis moved for a judgment of acquittal. Lewis argued that, while he was present when the crimes occurred, the state did not prove he acted as a principal in the crimes. Specifically, Lewis contended the state did not prove that he participated in the crimes, that he had a conscious intent for the crimes to be committed, or that he did something to assist Lester and Lee to commit the crimes. The trial court denied the motion.
 

 During the charge conference, Lewis objected to the following portion of the state’s proposed felony murder instruction:
 

 In order to prove a robbery, the state must prove these elements beyond a reasonable doubt: that Linwood Lewis and/or Leotis Lester and/or Federick Tavares Lee took something from the person or custody of Mark [sic] Thie-bault.
 

 Lewis argued that the instruction should not include the other men’s names because the other men were not on trial. According to Lewis, the jury should decide its verdict based upon his name and the instruction on principals. The trial court overruled the objection.
 

 The jury found Lewis guilty on both counts. The trial court sentenced Lewis to life in prison for first degree murder and to a concurrent fifteen-year term for attempted armed robbery.
 

 On appeal, Lewis raises three arguments: (1) the trial court did not conduct an adequate
 
 Richardson
 
 hearing; (2) the trial court should have granted his motion for judgment of acquittal; and (3) the felony murder jury instruction should not have included the other men’s names joined by the “and/or” conjunction. We will address each of Lewis’s arguments in turn.
 

 Once a trial court has notice of an alleged discovery violation, the trial court is obligated to conduct a
 
 Richardson
 
 hearing.
 
 Duest v. State,
 
 12 So.3d 734, 742 (Fla.2009). “The focus of this hearing is to determine ‘whether the state’s violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial.’ ”
 
 Id.
 
 at 742-43 (citation omitted). “In the past, the court’s failure to conduct a
 
 Richardson
 
 hearing was per se reversible error.”
 
 Smith v. State,
 
 7 So.3d 473, 505 (Fla.2009). However, “[i]n
 
 State v. Schopp,
 
 653 So.2d 1016, 1020 (Fla.1995), [the supreme court] concluded that ‘there are cases ... where a reviewing court can say beyond a reasonable doubt that the defense was not prejudiced.’ ”
 
 Smith,
 
 7 So.3d at 505. “When the reviewing court makes such a determination, then the discovery violation is deemed harmless and reversal is not warranted.”
 
 Id.
 
 at 505-06. “The inquiry is whether the violation ‘materially hindered the defendant’s trial preparation or strategy.’ ”
 
 Id.
 
 at 506 (citation omitted).
 

 Here, the trial court did not conduct an adequate
 
 Richardson
 
 hearing. The court never determined whether the state committed a discovery violation.
 
 See Tarrant v. State,
 
 668 So.2d 223, 225 (Fla. 4th DCA 1996) (where trial court did not make formal finding on the record whether there was a discovery violation, trial court’s inquiry was inadequate). Specifi
 
 *758
 
 cally, the court never determined whether the state or the police ever possessed Sylvia’s statement that she saw all three men standing very close together on her lawn before they ran away.
 
 See id.
 
 (“It is well-settled that the state is charged with constructive knowledge and possession of evidence withheld by state agents, including law enforcement officers.”).
 

 However, we can say beyond a reasonable doubt that, if the state committed a discovery violation in not disclosing Sylvia’s statement regarding where the men stood, Lewis was not prejudiced. Lewis’s response below has not persuaded us that the alleged non-disclosure affected his trial preparation or strategy. In his brief to this court, Lewis now argues that he may have: (1) explored the three men’s interaction and how it supported his defense; (2) investigated ways to impeach Sylvia’s testimony; or (8) decided against pursuing his chosen line of defense. Even if Lewis had raised these arguments below, we remain unconvinced that Lewis was procedurally prejudiced. Sylvia’s testimony did not relate to Lewis’s chosen defense, and she made no contradictory statements by which Lewis could have impeached her testimony. Thus, on Lewis’s first ground for appeal, we affirm.
 

 On Lewis’s second ground for appeal, “[t]he standard for reviewing a trial court’s ruling on a motion for judgment of acquittal is de novo.”
 
 Straway v. State,
 
 13 So.3d 1100, 1101 (Fla. 4th DCA 2009). In ruling on a motion for judgment of acquittal, a court’s proper task is to review the evidence “to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state.”
 
 Hill v. State,
 
 958 So.2d 549, 551 (Fla. 4th DCA 2007) (citation omitted). “In order to be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime.”
 
 Id.
 
 (citation omitted). “We recognize that mere knowledge that an offense is being committed does not equate to participation with criminal intent, and mere presence at the scene, including ... a display of questionable behavior after the fact, is not, alone, sufficient to establish participation.”
 
 Id.
 
 “The focus in a felony murder charge is not on the accused’s participation in the murder but in the underlying felony.”
 
 Hodge v. State,
 
 970 So.2d 923, 927 (Fla. 4th DCA 2008).
 

 From our review of the record, we find the evidence was sufficient to establish that Lewis aided and abetted Lester and Lee in the attempted robbery and, as a result, a jury reasonably could have found Lewis guilty of both attempted robbery and felony murder. The jury reasonably could have inferred that Lewis consciously intended to commit a robbery because he heard Lester’s statement that they were “fittin’ to go get this money,” he was told he would get some of the money, he joined Lester and Lee in jumping over a gate into the community, and he knew that Lester and Lee had guns. The jury also could have inferred that Lewis assisted Lester and Lee in attempting to commit the robbery when he watched out while they “ran up” on Thie-bault. Thus, on Lewis’s second ground for appeal, we affirm.
 

 On Lewis’s third ground for appeal, “ ‘[generally speaking, the standard of review for jury instructions is abuse of discretion.’ ”
 
 Newman v. State,
 
 976 So.2d 76, 78 (Fla. 4th DCA 2008) (citation omitted). “[H]owever, discretion, as with any issue of law is strictly limited by case law.”
 
 Id.
 
 (citation omitted). “A trial
 
 *759
 
 court ‘should not give instructions which are confusing, contradictory, or misleading.’ ”
 
 McKenzie v. State,
 
 830 So.2d 234, 236 (Fla. 4th DCA 2002) (citation omitted). “Reversible error occurs when an instruction is not only an erroneous or incomplete statement of the law, but is also confusing or misleading.”
 
 Id.
 
 at 236-37. “The test is not whether a particular jury was actually misled, but instead the inquiry is whether the jury might reasonably have been misled.”
 
 Id.
 
 at 237.
 

 We find that a jury would not reasonably have been misled by an instruction regarding the state proving robbery by “Linwood Lewis and/or Leotis Lester and/or Federick Tavares Lee” even though Lester and Lee were not tried as codefendants. In
 
 Garzon v. State,
 
 980 So.2d 1038, 1043-45 (Fla.2008), our supreme court held that a trial court’s use of the “and/or” conjunction between the names of codefen-dants in jury instructions was not fundamental error so as to warrant a new trial. There, the trial court instructed the jury that it could not convict one defendant on the actions of another unless the law of principals was met. Instead, the supreme court’s greater concern appeared to be whether the trial court correctly instructed the jury on the elements of the crime and on the law of principals.
 
 Id.
 
 at 1043-44. In this case, the trial court gave such correct instructions.
 
 But see Gilley v. State,
 
 996 So.2d 936, 939 (Fla. 2d DCA 2008) (trial court erred in repeatedly referring to defendant “and/or” two codefendants who were being tried separately).
 

 Even if the instruction in question was error as found in
 
 Gilley,
 
 “[a]n error is deemed harmless where there is no reasonable possibility that the faulty instruction contributed to the verdict.”
 
 Hunter v. State, 8
 
 So.3d 1052, 1071 (Fla.2008). Here, any error was harmless. The state presented evidence which showed beyond a reasonable doubt that Lewis intentionally participated in, and aided and abetted, an attempted robbery. Thus, on Lewis’s third ground for appeal, we affirm.
 
 [3]
 

 Affirmed.
 

 POLEN and STEVENSON, JJ., concur.
 

 [1]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971).
 

 [2]
 

 . It appears that, at the time of trial, the police had not apprehended Lee.
 

 [3]
 

 . In their briefs, the parties disputed whether Lewis preserved his objection not only to the use of Lester's and Lee’s names in the instruction, but also to the use of the "and/or” conjunction between their names and Lewis's name. Without further comment, we find that Lewis preserved his objection and, therefore, have addressed the issue's merits above.