DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**KENDRICK C. SILVER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D11-335

[July 16, 2014]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen Miller, Judge; L.T. Case No. 2007CF008020CXX.

Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Defendant Kendrick Silver ("Defendant") was convicted of three counts of attempted second-degree murder and two other misdemeanors. Defendant now appeals his convictions and sentences, alleging that the trial court erred by: (1) improperly allowing the State to impeach Defendant with questions about prior robberies; (2) giving an incomplete jury instruction; (3) allowing the State to strike a potential juror without a valid, race-neutral reason for doing so; and (4) denying his motion to suppress his post-arrest confession to investigators. We find none of Defendant's arguments on appeal warrant a reversal. We write to address only Defendant's argument regarding the incomplete jury instruction. With regard to this issue, we hold that any error was waived and that giving the requested jury instruction did not constitute fundamental error; thus, the instruction cannot be a basis for reversal on appeal.

**Background**

Defendant was an employee at Picasso's Pizza for about four months prior to the events occurring on June 1, 2007. That evening, Defendant and another individual entered the restaurant wearing masks and armed, with one individual carrying a revolver and one with a rifle. The masked men initially concentrated on controlling the restaurant's employees and owner. When the owner pleaded with one gunman to just take the money from the register, the gunman responded: "Just be quiet; you don't want to get shot, Papa." The owner later testified that only Defendant referred to the owner as "Papa." Based on this, and what the owner could see of this gunman's face through his mask, the owner realized that this gunman (with the revolver) was Defendant.

The owner was then ordered off the ground and into the back of the restaurant in order to open a safe. Both gunmen came to the back room where the safe was located. The owner then heard the back door of the restaurant slam shut, so he knew that one of the other employees had "took off running through the back door."

Once the safe was open, the owner told the gunman, "I told you there was no money in there." The gunmen then saw that the employees were all running out the back door, leaving the owner by himself for a few seconds. At this point, the owner took off running and heard gunshots. After reaching the front door, the owner heard the man with a revolver yell "stop," then the gunman shot the owner in the arm. The owner kept running and finally saw police who were responding to the robbery.

One of the employees ran toward a storage warehouse that was located directly behind the pizza restaurant. The owner of the warehouse was present at the warehouse the night of the robbery and heard the fleeing employee yelling that the restaurant was being robbed. The warehouse owner then dialed 911 and also pulled the escaping employee into the warehouse, shutting the warehouse door behind him as he noticed a person wearing a mask emerge from the back of the restaurant. Gunfire followed, with both the warehouse owner s and the employee being shot.

After law enforcement officers arrived on the scene of the shooting, a search for the suspects began. Eventually, Defendant and another individual were found hiding inside a boat.

After being given *Miranda*[1] warnings, Defendant confessed that he was part of the robbery of the pizza restaurant that "went bad." He also admitted to both shooting at the owner and at "the wall" of the storage unit

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

when he saw the employee run inside with the other man.  At his trial, however, Defendant provided a very different story, contending that he was at the restaurant the night of the robbery only because he was picking up his paycheck, and that he left once two men with whom he came to the restaurant announced their intention to rob it.

The initial jury instructions read to the jury were agreed upon by both parties.  These instructions included a brief statement designating the charge of attempted manslaughter as a lesser-included offense of first-degree murder ("[Y]ou will then consider the circumstances around the attempted killing in deciding if it was attempted first-degree murder or . . . attempted voluntary manslaughter.").  The instructions did not include any further mention of attempted voluntary manslaughter.

After reading a substantial portion of the instructions to the jury, the trial court noticed the instructions had a number of typos and other errors.  The judge then addressed the prosecutor and defense counsel:  "These jury instructions really are not acceptable.  Why don't we do it this way; why don't we adjourn, you can go back . . . you make the corrections, we'll come back tomorrow, we'll do the jury instructions."  When the parties arrived in court on the following day with the revised/corrected instructions, the statement about attempted voluntary manslaughter was omitted completely, and defense counsel affirmatively stated that he was "in agreement with these instructions."  Thereafter, the instructions were read to the jury.

Defendant was convicted of three counts of attempted second-degree murder (as lesser included offenses of attempted first-degree murder) and two other misdemeanors.

**Standard of Review**

"'Generally speaking, the standard of review for jury instructions is abuse of discretion,' but that 'discretion, as with any issue of law is strictly limited by case law.'" *Krause v. State*, 98 So. 3d 71, 73 (Fla. 4th DCA 2012) (quoting *Lewis v. State*, 22 So. 3d 753, 758 (Fla. 4th DCA 2009)).  Any objection to a jury instruction must be specific; without a specific objection during the jury charge conference, the issue is reviewed to determine if any error was fundamental.  *Id.*  In the instant case, Defendant did not object to the jury instructions.

Fundamental error is error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  *Id.* (quoting *Bassallo v. State*,

3

46 So. 3d 1205, 1209 (Fla. 4th DCA 2010)). "[T]he fundamental error doctrine should be applied 'only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application.'" *Nesbitt v. State*, 889 So. 2d 801, 802 (Fla. 2004) (quoting *Ray v. State*, 403 So. 2d 956, 960 (Fla. 1981)).

**Analysis**

Defendant argues that it was fundamental error for the jury to not have been instructed on attempted manslaughter as a lesser-included offense of attempted first-degree murder. The State responds that this argument was waived by defense counsel because defense counsel did not object and agreed to the instructions as given.

### A. Failure to instruct on lesser included offenses is not necessarily fundamental error.

In non-capital cases, the "failure to instruct on necessarily lesser-included offenses (even category 1 lesser-included offenses) . . . is not fundamental error." *Generazio v. State*, 727 So. 2d 333, 335 (Fla. 4th DCA 1999). In addressing a similar scenario, the Florida Supreme Court has stated:

> In formulating his argument, petitioner asks us to apply the label "fundamental error" to this case, thereby allowing this Court to stray from the long and unbroken lines of precedent conditioning a right to jury instructions on lesser included offenses upon a request for such instructions, *State v. Bruns*, 429 So. 2d 307 (Fla. 1983); *Griffin v. State*, 414 So. 2d 1025 (Fla. 1982); *Chester v. State*, 441 So. 2d 1165 (Fla. 2d DCA 1983); *Wheat v. State*, 433 So. 2d 1290 (Fla. 1st DCA 1983), *review denied*, 444 So. 2d 418 (Fla. 1984), and requiring a contemporaneous objection as predicate to proper appellate review, *Harris v. State*, 438 So. 2d 787 (Fla. 1983), *cert. denied*, 466 U.S. 963, 104 S. Ct. 2181, 80 L. Ed. 2d 563 (1984); *Ray v. State*, 403 So. 2d 956 (Fla. 1981).

*Jones v. State*, 484 So. 2d 577, 579 (Fla. 1986). In *Harris*, a capital case, the supreme court held that criminal defendants have a fundamental right to have the jury instructed on all necessarily lesser-included offenses. However, the supreme court in *Jones* expressly declined to extend *Harris* to non-capital cases. *Id*. ("[r]ecognizing that the role of defense counsel necessarily involves a number of tactical decisions and procedural determinations inevitably impacting on a defendant's constitutional

4

rights," and finding "no personal waiver [with respect to jury instructions on lesser-included offenses] is required in order to guarantee fundamental fairness in the non-capital context").

This court recently found that the failure of the trial court to give a lesser-included offense instruction (in that case, the omitted instruction also was "attempted manslaughter") was not fundamental error, as the defendant failed to request the instruction. *Cosme v. State*, 89 So. 3d 1096, 1097 (Fla. 4th DCA 2012). *Cosme* cited to *Gomez v. State,* 5 So. 3d 700, 702 (Fla. 5th DCA 2009), for the proposition that, "[w]hen there is no timely request made by the defendant, a trial court's failure to instruct on a necessarily-lesser included offense in a non-capital case does not constitute fundamental error." *Cosme*, 89 So. 3d at 1097.

Our sister court has reached a similar conclusion. In *Firsher v. State*, 834 So. 2d 921, 922 (Fla. 3d DCA 2003), the defendant was charged with attempted second degree murder. The jury was not instructed on the category 1 lesser included offense, attempted manslaughter; instead, as in the instant case, defense counsel requested an instruction on aggravated battery. The court noted:

> [I]t is not fundamental error to convict a defendant under an erroneous lesser included charge when he had an opportunity to object to the charge and failed to do so if: 1) the improperly charged offense is lesser in degree and penalty than the main offense or 2) *defense counsel requested the improper charge or relied on that charge as evidenced by argument to the jury or other affirmative action.* Failure to timely object precludes relief from such a conviction.

*Id.* at 922 (quoting *Armstrong v. State,* 579 So. 2d 734, 735 (Fla. 1991)) (in turn, quoting *Ray*, 403 So. 2d at 961 (emphasis supplied by *Armstrong*)); *see also Nesbitt*, 889 So. 2d at 803 (quoting *Ray*, 403 So. 2d at 961). Thus, consistent with *Jones,* the exception to fundamental error exists "where defense counsel affirmatively agreed to or requested the incomplete instruction." *State v. Lucas*, 645 So. 2d 425, 427 (Fla. 1994). A defendant in a non-capital case must specifically request instructions on lesser-included offenses, or object to the omission; otherwise, any error in failing to give an instruction that was not requested is not preserved for appellate review and is not fundamental error.

Such was the case here. Defense counsel did not request an instruction on attempted voluntary manslaughter, and in fact was a participant in modifying the initial instructions and deleting the instruction on

attempted voluntary manslaughter. Thus, no such instruction was given. To hold that such an omission constitutes fundamental error would "stray from the long and unbroken lines of precedent conditioning a right to jury instructions on lesser included offenses upon a request for such instructions." *See Jones*, 484 So. 2d at 579.

The initial instructions in the instant case briefly discussed attempted voluntary manslaughter as a lesser included offense: "[Y]ou will then consider the circumstances surrounding the attempted killing in deciding if it was attempted first-degree murder or attempted second-degree murder or attempted third-degree murder *or attempted voluntary manslaughter* or . . . ." (emphasis added). These initial instructions did not include instructions about the specific elements of attempted manslaughter, although the specific elements of the other lesser-included offenses were discussed therein. After the trial court noticed typos, confusing language, and errors in other parts of the jury instructions, it adjourned so that the parties could "make the corrections" to the jury instructions. When the parties arrived in court on the following day with the revised/corrected instructions, any mention of attempted voluntary manslaughter was omitted completely, and defense counsel affirmatively stated that he was "in agreement with these instructions."

By all indications, counsel was alerted to the fact that the initial instructions were incomplete; instead of requesting a complete instruction, however, counsel agreed to remove any mention of attempted voluntary manslaughter completely. The record indicates defense counsel, like the jury instructions he agreed to, purposefully neglected to mention/discuss a jury instruction regarding attempted manslaughter when making his closing argument to the jury:

> This is what's there: aggravated battery with a firearm, that's there . . . . There was an aggravated battery committed here with a firearm; there was no attempted first-degree murder; there was no attempted second-degree murder.

As delineated in the transcript, defense counsel's strategy (at least in part) was to argue that the facts demonstrated only an aggravated battery with a firearm rather than the charged offenses, *i.e.,* Defendant was merely shooting at the wall of the warehouse, with no intent to kill the warehouse owner or the fleeing employee (and arguing that he never shot at the owner). Accordingly, the record demonstrates not only defense counsel's affirmative agreement with respect to the omission, but also reliance on the instructions as read. As in *Armstrong*, defense counsel modified the

instruction to "tailor it to the defense . . . ." *Armstrong*, 579 So. 2d at 735. It was "a tactical decision." *Id.* at 735 n.1. As stated in *Armstrong,*

> By affirmatively requesting the instruction he now challenges, [the defendant] has waived any claim of error in the instruction. Any other holding would allow a defendant to intentionally inject error into the trial and then await the outcome with the expectation that if he is found guilty the conviction will be automatically reversed.

*Id.* at 735 (footnote omitted). Similar to *Armstrong*, defense counsel in the instant case relied on the charge as evidenced by approval of the submission of the revised jury instructions, which deleted attempted manslaughter as a lesser included charge. *See id.* Thus, the *Armstrong/Ray* exception to "the general rule" is applicable in the instant case.

### B. The jury had an opportunity to exercise its "pardon" capacity.

"As a general rule, 'the failure to instruct on the next immediate lesser-included offense (one-step removed) constitutes error that is per se reversible.'" *Firsher,* 834 So. 2d at 922 (quoting *State v. Abreau*, 363 So. 2d 1063, 1064 (Fla. 1978)). The instant case does not involve "the failure to instruct on the next immediate lesser-included offense (one step removed)." *Id.* The jury *was* instructed on the next immediate lesser-included offense of attempted second degree murder. Moreover, the jury in this case was instructed on the lesser-included offense of aggravated battery with a firearm which, like the omitted instruction of attempted manslaughter with a firearm, is a second degree felony. Thus, the jury was provided "a fair opportunity to exercise its inherent 'pardon' power by returning a verdict of guilty as to the next lower crime." *Id.* at 923 (quoting *Abreau*, 363 So. 2d at 1064).

### C. The jury instructions did not contain erroneous definitions of the charged offenses.

We are aware of our supreme court's recent decision in *Williams v. State,* 123 So. 3d 23 (Fla. 2013), but find this case distinguishable. In *Williams*, the court found that the standard jury instruction for attempted manslaughter by act constituted fundamental error because it included an intent to kill element. In that case, the defendant was convicted of attempted second degree murder, and the supreme court held fundamental error existed in the following context:

7

> [B]ecause the jury found Williams guilty of attempted second-degree murder, an offense not requiring proof of intent to cause the death of the victim, it must have determined that Williams did not intend to cause the victim's death. And, because the instruction given for attempted manslaughter by act erroneously included an intent to kill element, the jury was left with attempted second-degree murder as the only viable lesser included offense under the instructions given.

*Id.* at 28. *Williams* and the earlier decision in *State v. Montgomery*, 39 So. 3d 252 (Fla. 2010), as well as the supreme court's decision in *Haygood v. State*, 109 So. 3d 735 (Fla. 2013), addressed the issue of whether the standard jury instruction for attempted voluntary manslaughter and voluntary manslaughter, as read in those cases, constituted fundamental error by erroneously including an intent to kill element. The issue in the instant case, however, is whether fundamental error – if any – was waived when defense counsel chose to omit the attempted manslaughter instruction altogether (presumably in order to steer the jury to the lesser-included offense of aggravated battery). Accordingly, *Williams*, *Montgomery*, and *Haygood* are distinguishable and do not warrant a reversal.

**Conclusion**

In this case, counsel was alerted to an incomplete instruction on attempted manslaughter when it was included in the haphazard initial jury instructions. When asked to amend these instructions because of typos and other errors contained therein, counsel did not seek a complete instruction on attempted manslaughter, but instead agreed to an omission of the attempted manslaughter instruction altogether. Moreover, counsel then relied on the omission during his closing argument to the jury. It is not fundamental error in non-capital cases to omit an instruction on a lesser-included offense (particularly when an instruction on the "next immediate lesser-included offense" is given) when that instruction is neither requested nor objected to. *See Jones*, 484 So. 2d at 579. As discussed above, we find the record reflects a situation where any fundamental error in omitting the attempted manslaughter instruction was waived in the instant case via strategic decisions made by counsel below.

Moreover, we find that defense counsel in this case went beyond mere acquiescence in the erroneous omission. Instead, the record reflects that defense counsel's "failure to object has been coupled with affirmative acts either seeking or acquiescing in the erroneous instructions." *See Nesbitt*,

889 So. 2d at 803 (quoting *Ray*, 403 So. 2d at 961).  Based on the foregoing, we find no reversible error occurred by failing to give an instruction on attempted voluntary manslaughter.  We also find no merit in the other issues raised by Defendant on appeal.  Accordingly, we affirm Defendant's convictions and sentences.

*Affirmed.*

TAYLOR and MAY, JJ., concur.

*          *          *

***Not final until disposition of timely filed motion for rehearing.***

9