520 So.2d 676 (1988)
Eugene WIDNER, Appellant,
v.
STATE of Florida, Appellee.
No. BR-440.
District Court of Appeal of Florida, First District.
March 1, 1988.
*677 Michael E. Allen, Public Defender, and Terry P. Lewis, Sp. Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Gary L. Printy, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before us on appeal of appellant's jury convictions for manslaughter, robbery, and grand theft auto. The unsavory facts in this case are that appellant and a codefendant, Gary Wayne Thompson, went to the victim's house one night, supposedly to seek a loan. Thompson knew the victim, Robert Bowden, Sr., because Bowden had previously befriended him by offering him money and a place to stay when Thompson was down on his luck. Appellant did not know Thompson very well, and knew him only by an alias.[1] Appellant and Thompson had decided to go to Fort Lauderdale to seek employment, because they were having trouble supporting themselves where they were. Thompson told appellant that Bowden would loan them the money for the trip.
When the two men arrived on August 29, 1986, they helped Bowden carry an organ into the living room and install it. As Bowden sat down to play a gospel hymn, appellant left the room in order to use the bathroom. While he was there, he heard a commotion and the words "Why, Steve!" When he returned to the living room, Thompson was beating Bowden on the head with a masonry drill. Bowden died of 31 blows to the head, though not immediately.
Appellant testified at trial that he had no inkling of what Thompson planned and was shocked and appalled when he came upon the beating. Although he tried to break the two men up, Thompson began to attack him, and appellant withdrew long enough for Thompson to finish the beating. According to appellant, he was in such fear of Thompson that he followed his subsequent orders to watch for interruptions while Thompson ransacked the house. Still in fear, he helped Thompson carry the loot to one of Bowden's automobiles, which they loaded and stole. Bowden was known for carrying large amounts of cash at all times. With this money and other stolen valuables, appellant, Thompson, and appellant's sister drove to Fort Lauderdale. Appellant never told his sister what happened and allowed Thompson to explain their bloody and disheveled condition as the result of a fight Thompson had with his roommate. The sister returned home after two days in Fort Lauderdale, but Thompson and appellant remained until they ran out of money and valuables to pawn. When appellant called his sister in mid-September for money, she turned him and Thompson in to the police because she had heard about the murder in the interval.
Although appellant was charged with first-degree murder, he was only convicted of manslaughter and the other offenses listed above. After reviewing the arguments made concerning appellant's convictions, we find no error. Accordingly, the convictions are affirmed. However, the trial judge departed from the guidelines recommendation of five years and sentenced appellant to 15 years for the manslaughter. The trial court's departure statement need not be repeated here and can be summarized as a detailed account of the heinous circumstances surrounding this brutal murder. The statement did indicate that the court believed appellant knew what was going to happen before accompanying Thompson to Bowden's house. It also included *678 several references to the court's belief that the crimes were cold-blooded, cruel, and a betrayal of trust.
The offenses were cold-blooded and cruel, and it is very likely that Thompson planned the murder. However, the jury convicted appellant of manslaughter only. Consequently, any premeditation involved in the offense was not appellant's responsibility. Where a defendant is charged with first-degree murder but convicted of manslaughter, reasons indicating premeditation are invalid grounds for departure because they consider an offense for which there was no conviction. See Mayo v. State, 518 So.2d 458 (Fla. 1st DCA 1988); Vanover v. State, 498 So.2d 899 (Fla. 1986); Sloan v. State, 472 So.2d 488 (Fla. 2d DCA 1985).
Additionally, although we agree with the trial court that this was a very extreme example of manslaughter and robbery, the reason it is so extreme is because of what Thompson, not appellant, did. The gruesome nature of this murder is not a valid ground for departure in appellant's case, where the jury's manslaughter verdict indicated it did not believe appellant was an actual participant in the killing. Similarly, although codefendant Thompson certainly violated the trust the victim had shown by taking him into his home and assisting him, that breach of trust cannot be imputed to appellant, who did not know the victim until meeting him a half an hour before the murder. In sum, the trial court's departure statement includes reasons which consider factors of a crime for which there was no conviction or which have no application to appellant's actions in this case. Accordingly, the cause is reversed and remanded for resentencing within the guidelines.
BOOTH, WIGGINTON, and ZEHMER, JJ., concur.
NOTES
[1] Steve Skaggs. Thompson was tried separately and did not testify at trial.