WARNER,. C.J.
The appellant, Robert Messer, challenges his conviction and sentence for manslaughter, contending that the evidence was not legally sufficient to sustain *528 his conviction. However, because he requested that the jury be instructed on manslaughter as a lesser included offense of first degree murder, and we conclude that the evidence was sufficient to convict him as a principal or aider and abetter to-murder, he cannot now complain that the evidence is legally insufficient on the charge of manslaughter. We reverse, however, the departure sentence because the grounds for departure did not apply to conduct for which Messer was responsible.
The majority of the evidence against Messer arose from his statements to the police. According to Messer, he lived with two other men, Luis Caballero and Isaac Brown, in an apartment complex where Denise O’Neill also resided. About three weeks prior to O’Neill’s murder, Caballero approached Messer and asked if he would participate in robbing O’Neill, as Caballero discovered that she had a lot of cash. Messer refused. On the day of the murder, Caballero approached Messer at a mall and told him that he and Brown had abducted O’Neill and tied her up in Caballero’s apartment. Caballero was driving O’Neill’s car. He informed Messer that they would have to kill O’Neill because she had seen their faces and asked Messer to join them. Messer says he told Caballero that was “stupid.” Nevertheless, Messer got into O’Neill’s car and accompanied Caballero to an ATM, where Caballero used O’Neill’s ATM card to withdraw money.
After obtaining the cash, they returned to the apartment, and Messer went inside, observing O’Neill tied up in a bedroom with a pillow case over her head. Messer told them to remove the pillow case from her head because she might not be able to breathe, but 'Caballero said she was going to die anyway. Messer stayed out of the bedroom, but he watched as Caballero and Brown practiced strangling O’Neill with a telephone cord. He says he told them again that he would not participate. However, he remained in the apartment and with his fingers in his ears was still able to hear her scream and choke as she was being killed. After they killed her, Caballero exited the bedroom and gave $60 to Messer, telling him to meet him later.
Messer left for a couple of hours and then returned. The other two men were discussing how to dispose of the body. The three men went into O’Neill’s apartment, although Messer told police that he did not take anything while he was there. Messer would not touch the body, but he. covered her head with a sheet, acted as a lookout when they carried the body to her car, and then rode with them in the car until they stopped and dumped her body in a canal. They later went to a restaurant for breakfast, where Caballero gave Mes-ser another $50 and told him to move out of the apartment. After Caballero and Brown were apprehended, the police discovered Messer’s possible involvement, leading to his statements to the police and subsequent arrest.
The state charged Messer with being a principal to premeditated murder, felony murder, robbery, kidnapping, and burglary. At trial the court denied a motion for judgment of acquittal on the charge of premeditated murder, as well as the underlying felonies. During the charge conference, the defense requested that the jury be instructed on manslaughter. The jury returned a verdict finding appellant guilty of manslaughter and trespass, a lesser included offense of the burglary charge. It also found Messer not guilty of robbery and kidnapping.
Where a defendant requests an instruction on a lesser included offense, he may contest the legal sufficiency of the lesser included offense only where the evidence is insufficient to convict the defendant of the greater offense. See State v. Espinosa, 686 So.2d 1345, 1348 (Fla.1996); Viveros v. State, 699 So.2d 822, 826 (Fla. 4th DCA 1997).
To hold otherwise would allow a defendant to request an instruction on the lesser-included offense in anticipation *529 that the jury will exercise its “pardon power,” after which the defendant could seek reversal based on the sufficiency of the evidence.... Such a holding would allow a defendant to essentially “sandbag” the State while committing a fraud on both the jury and the judge.
Espinosa, 686 So.2d at 1348. In the instant case, the defense requested all less-ers. Therefore, we must determine whether the evidence was legally sufficient to convict the defendant of first degree murder. Because Messer was acquitted of the underlying felonies of robbery and kidnapping, we address only whether the evidence was legally sufficient to convict Mes-ser of being a principal to premeditated murder.
In order to convict a person of aiding and abetting in the commission of a crime, the state must prove that the defendant intended the crime to be committed and did some act to assist the person in committing the crime. See Staten v. State, 519 So.2d 622, 624 (Fla.1988). As to the intent element, the state may show either that the defendant had the requisite intent or that he knew that the perpetrator had that intent. See id (citing Stark v. State, 316 So.2d 586, 587 (Fla. 4th DCA 1975)); see also Sikes v. State, 711 So.2d 250, 252 (Fla. 4th DCA 1998). The act element necessary to convict requires “doing or saying something that caused, encouraged, assisted, or incited the perpetrators to actually commit the crime.... The elements of assistance of the perpetrator and intent 'may be proved by a combination of surrounding circumstances from which a trier of fact can reasonably infer defendant’s guilt.” K.O. v. State, 673 So.2d 47, 48 (Fla. 4th DCA 1995)(emphasis added) (citations omitted).
Despite Messer’s claims that he did not intend to participate, this is one case where a jury could conclude that actions speak louder than words. There is no question of the perpetrators’ intent to commit the crime. Messer admits that he was told that they intended to murder the victim. Yet, despite that knowledge, when asked by Caballero to join in, he got into the victim’s vehicle and accompanied Caballero while Caballero obtained cash using the victim’s ATM card. He then further accompanied Caballero to the apartment where he observed the victim bound and with a pillow case over her head. He also watched while Caballero and Brown practiced their technique for the murder. After listening to the victim struggle while being strangled to death in the nearby bedroom, he accepted part of the proceeds, left, and then returned to help dispose of the body. These acts are inconsistent with his claim that he did not intend to assist in the crime. In fact, he practically admitted his involvement in his statement to the police. He told the police that when he protested at the mall against becoming involved, Caballero told him that he didn’t have a choice and that he was already involved. Getting into the ear at that point was tantamount to agreeing with Caballero that he was involved.
Messer cites Collins v. State, 438 So.2d 1036, 1038 (Fla. 2d DCA 1983) for the proposition that:
[m]ere knowledge that an offense is being committed is not the same as participation with criminal intent, and mere presence at the scene, including driving the perpetrator to and from the scene or a display of questionable behavior after the fact, is not sufficient to establish participation.
He also indicates that Staten relies on Collins. While Staten agreed that the foregoing was a correct statement of law, the court distinguished Collins. See Staten, 519 So.2d at 624. It noted that in Collins, when the only eyewitness of the crime recanted his identification of Collins as the individual seen dropping off and picking up the actual perpetrator of the burglary, the only evidence left was his presence at the scene (i.e., his apprehension a short distance away from the store) and “questionable behavior” when stopped by the officers, which was - insufficient to *530 convict. See id. The “questionable behavior” consisted of Collins’ jumping out of his vehicle when stopped by the officers and immediately asking them why he had been stopped. Thus, there was nothing to connect him to the burglary or the perpetrator. This is a far cry from the evidence in this case, where Messer was not only present but knew what the perpetrators ■ intended to do, collected part of the proceeds of the robbery, and then helped them dispose of the body. These acts are sufficient to show an intent to participate and are inconsistent with Messer’s hypothesis of innocence.
Because the evidence was legally sufficient to convict Messer of the greater charge, he cannot now be heard to complain that the evidence was insufficient to sustain his conviction for the -lesser included charge. See Espinosa, 686 So.2d at 1348. We therefore affirm his conviction.
As a result of his conviction, the trial court departed from the guidelines sentence of five years and imposed an upward departure sentence of fifteen years on three grounds: (1) the offense was one of violence and was committed in a manner that was especially heinous, atrocious or cruel; (2) the victim suffered extraordinary physical or emotional trauma or permanent physical injury, or was treated with particular cruelty; and (3) the offense was committed in order to prevent "or avoid arrest. In Widner v. State, 520 So.2d 676 (Fla. 1st DCA 1988), when the defendant was tried for first degree murder but convicted only of manslaughter, the court reversed a departure sentence that was based on- the ground that the crime was especially heinous. While acknowledging the gruesome nature of the murder, the court noted that “the reason it is so extreme is because of what [the co-defendant], not appellant, did. The gruesome nature of this murder is not a valid ground for departure in appellant’s case, where the jury’s manslaughter verdict indicated it did not believe appellant was an actual participant in the killing.” Id. at 678. The court reversed, observing that “the trial court’s departure statement includes reasons which consider factors of a crime for which there was no conviction or which have no application to appellant’s actions in this case.” Id.
Similarly, in this case, the trial court’s reasons for departure do not apply to Mes-ser. As to the heinous, atrocious, or cruel manner in which the crime was committed, these acts were committed by Caballero and Brown, who abducted the victim and held her hostage in Caballero’s apartment. It was also Caballero and Brown who tied up the victim and placed a pillow case over her head. In addition, it was Caballero and Brown who went into the bedroom and choked the victim to death with a telephone cord. It cannot be said that Mes-ser’s presence, knowledge, or failure to act was a heinous, atrocious, or cruel manner of crime. As to the second ground, the victim suffered extraordinary physical trauma at the hands of Caballero and Brown, who abducted the victim, tied her hands and feet, and then choked her to death with a telephone cord. Finally, the offense was committed to prevent Caballero’s .arrest. Caballero initially approached Messer in the mall and told him that “he was going to have to kill [the victim] because of the fact that [s]he had already seen [Caballero’s and Brown’s] faces.” Thus, the murder was committed to prevent the victim from later speaking to the police. Messer’s assistance in dumping the body after the murder is immaterial because the crime committed to avoid arrest was the murder of the victim, not the disposal of her body.
The state has not cited to a case in which a departure sentence has been upheld on a co-defendant’s actions in -committing a crime but in which the jury did not hold the defendant directly responsible. We conclude that the reasons given by the trial court are not applicable to the defendant and are thus not valid grounds for an upward departure in this case. We there *531 fore reverse for sentencing -within the guidelines.
GUNTHER and KLEIN, JJ., concur.