DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**THAROD BELL,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-2417

[December 3, 2014]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen Miller, Judge; L.T. Case No. 2008CF017526DXX.

Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

Appellant, Tharod Bell, appeals his judgment and sentence after a jury found him guilty of two counts of attempted first-degree murder, five counts of armed robbery, five counts of aggravated assault, and five counts of false imprisonment. Bell argues that the trial court erred in giving the felony murder instruction and in denying his motion for judgment of acquittal. We disagree, and affirm.

Bell was charged by information with three counts of attempted first-degree murder, six counts of robbery with a firearm, five counts of aggravated assault with a firearm, and five counts of possession of a firearm while committing a false imprisonment arising from a robbery-turned-attempted murder occurring at a Dunkin Donuts.

On the day before Thanksgiving 2008, officers were dispatched to a Dunkin Donuts in Delray Beach. When officers arrived, they found the store in disarray; there was furniture overturned, blood, and bone fragments on the floor.

Officers learned that four men entered the Dunkin Donuts around 10:30 p.m., masked, and dressed in black. Patrons were told to get on the floor and throw their money on the floor. Although witnesses testified that all of the people inside the store complied with this request, one of the masked men, who was carrying a shotgun, shot two men in the face. While both men survived, they suffered severe injuries. As the masked men were leaving the store, the third gunshot victim pulled up to the restaurant, flashed his lights at them, and the gunman shot him as well. The third gunshot victim also survived, but experienced facial injuries from "buckshot."

A week later, officers searched a townhome that was suspected to be occupied by one of the participants in the crime. The search yielded various credit cards and driver's licenses of the Dunkin Donuts patrons, as well as yellow shotgun shells, the same color as the shells found at the scene.

A.G., one of the persons living in the townhome, testified that five men, including Bell, met at the townhome on the night of the crime. She saw them dressed in black from "head to toe," and at one point, all but one left the townhome, borrowing her car. She saw one of the men retrieve a shotgun from under the couch. She stated that the four men returned a few hours later carrying a black backpack. When the men poured out the contents of the backpack, A.G. saw credit cards, checks, and money. A.G. also testified that a few days after three of the men were arrested, Bell and another suspect returned to the townhome, asked for the shotgun, and left taking it with them.

The day after officers searched the townhome, Bell and another suspect were stopped at the seaport and detained. Bell told officers he was attempting to board a cruise ship to the Bahamas.

Bell then gave a recorded interview with detectives that was played for the jury. In this interview, Bell claimed that he participated in the robbery only because the shooter threatened to kill him if he did not participate. He also stated that, while the four men were driving to the Dunkin Donuts, the shooter stated: "this time I'm going after lives, I'm claiming bodies."

During the trial, Bell objected to the trial court instructing the jury on attempted felony murder. Bell argued that the State never alleged attempted felony murder in the original or any amended information. He also argued that the State specifically mentioned "premeditated" in the information, so the State should be entitled to travel only under the theory of attempted premeditated murder, not attempted felony murder, for the

first-degree murder counts. The trial court overruled this objection, and instructed the jury on attempted felony murder, as well as attempted premeditated murder. The trial court also denied Bell's motion for judgment of acquittal as to the counts of attempted first-degree murder.

The jury found Bell guilty of two counts of attempted first-degree murder, five counts of robbery with a firearm, five counts of aggravated assault with a firearm, and five counts of possession of a firearm while committing a false imprisonment. Bell was adjudicated guilty on all counts, and sentenced to seven life sentences and ten concurrent fifteen year sentences. This appeal follows.

*Felony Murder Instruction*

"Generally speaking, the standard of review for jury instructions is abuse of discretion, but that discretion, as with any issue of law is strictly limited by case law." *Krause v. State*, 98 So. 3d 71, 73 (Fla. 4th DCA 2012) (quoting *Lewis v. State*, 22 So. 3d 753, 758 (Fla. 4th DCA 2009)) (internal quotation marks omitted).

The information charged Bell with first-degree murder, and specifically mentions "premeditation" in the explanatory portion. Bell argues that, since the State did not mention felony murder in the information, it was error for the trial court to instruct on felony murder.

Our supreme court has held that the State can pursue either a theory of felony murder or premeditated murder when it charges a defendant with premeditated murder. *See Parker v. State*, 904 So. 2d 370, 382-83 (Fla. 2005) ("It is well established that an indictment which charges premeditated murder permits the State to prosecute a defendant under alternative theories of premeditated and felony murder when the indictment charges premeditated murder."); *Kearse v. State*, 662 So. 2d 677, 682 (Fla. 1995) ("The State need not charge felony murder in an indictment in order to prosecute a defendant under alternative theories of premeditated and felony murder when the indictment charges premeditated murder.").

We have held the same. *See Stanley v. State*, 57 So. 3d 944, 948 (Fla. 4th DCA 2011) (recognizing our supreme court's holding that the state does not have to charge felony murder when the indictment charges premeditated murder in order to travel under that theory and using this concept to support its holding). We have also held similarly as to the crimes of *attempted* felony murder and *attempted* premeditated murder.

3

*See Dempsey v. State*, 72 So. 3d 258, 260-61 (Fla. 4th DCA 2011) ("[W]e conclude that [the defendant] could have been charged with attempted first-degree murder, and the State could have prosecuted [the defendant] under either attempted premeditated murder or attempted felony murder, without violating his right against double jeopardy.").

Therefore, the trial court did not err in giving the felony murder instruction.

*Motion for Judgment of Acquittal*

Bell argues on appeal, only as to the attempted first-degree murder charges, that the trial court erred in denying his motion for judgment of acquittal. "In reviewing a motion for judgment of acquittal, a de novo standard of review applies." *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002).

Since the main evidence used against Bell was his own confession, the State provided direct evidence of his guilt. *See Meyers v. State*, 704 So. 2d 1368, 1370 (Fla. 1997) ("Because confessions are direct evidence, the circumstantial evidence standard does not apply in the instant case."). Because the State provided direct evidence, the standard for the judgment of acquittal is:

> A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge.

4

*Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974).

The State proceeded under both a premeditation and a felony murder theory for the attempted first-degree murder charges. The jury was instructed that the elements of attempted felony murder are: (1) Bell committed or attempted to commit a robbery; (2) while engaged in the commission, attempted commission or escape from the immediate scene of a robbery, the defendant committed or aided or abetted an intentional act that is not an essential element of robbery; and (3) this intentional act could have, but did not, cause the death of the victims. *See also* Fla. Std. Jury Instr. (Crim.) 6.3.

Bell admitted to the jury throughout the trial that he participated in the robbery, thus satisfying element one. Bell also assisted in containing the victims in the store while his co-assailant shot them, thus satisfying elements two and three. *Cf. State v. Blanton*, 821 So. 2d 440 (Fla. 5th DCA 2002).

The jury was instructed that the elements of attempted premeditated murder are: (1) Bell did some act intended to cause the death of the victims that went beyond just thinking or talking about it; (2) Bell acted with a premeditated design to kill the victims; and (3) the act would have resulted in the death of the victims except that someone prevented Bell from killing the victims or he failed to do so. *See also* Fla. Std. Jury Instr. (Crim.) 6.2. Additionally, Bell was charged as a principal, for which the elements are: (1) Bell had a conscious intent that the criminal act be done; and (2) Bell did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually attempt to commit the crime. *See also* Fla. Std. Jury Instr. (Crim.) 3.5(a). Bell argues that the State did not provide sufficient evidence to show that Bell had the requisite intent for attempted premeditated murder.

"As to the intent element, the state may show either that the defendant had the requisite intent or that he knew that the perpetrator had that intent." *Messer v. State*, 757 So. 2d 526, 529 (Fla. 4th DCA 2000). Bell argues that the State did not prove that he had knowledge of the shooter's intent to kill because the shooter's statement, "I'm claiming lives," was ambiguous. We find that the shooter's statement provided sufficient evidence for the jury to find that the shooter intended to kill people, claiming bodies and lives, and that Bell knew of the shooter's intent through that statement. During the recorded interview of Bell, the detective asked Bell, and Bell responded:

5

> DETECTIVE: He meant to kill each of these - - he told you he meant to kill him?

> BELL: Yes. Before we left, he told us "n-----, I'm getting paid, but by that same time I'm grabbing bodies, I'm grabbing lifes." [sic]

In *Lewis v. State*, 22 So. 3d at 758, we held that the trial court properly denied the defendant's motion for judgment of acquittal, and the jury could have inferred the defendant's conscious intent "to commit a robbery because he heard [the co-defendant]'s statement that they were 'fittin' to go get this money,' he was told he would get some of the money, he joined [the two co-defendants] in jumping over a gate into the community, and he knew that [the two co-defendants] had guns." The instant case has very similar facts. Similar to the defendant in *Lewis*, Bell heard the shooter make a statement of an intent to commit the crime, participated in the robbery, arguably knew he would benefit from the robbery based on his participation, and also knew that the shooter had a shotgun with him during the robbery.

We therefore affirm Bell's convictions and sentence.

*Affirmed.*

WARNER, MAY and CONNER, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

6