DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CALVIN WEATHERSPOON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-2775

[June 24, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen Miller, Judge; L.T. Case No. 2008CF017526BXXXMB.

Ira Karmelin, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

We affirm the convictions and sentences of appellant. As to his claim that the trial court erred in instructing the jury on attempted felony murder, we have previously addressed this issue in the appeal of his co-defendant. *See Bell v. State*, 152 So. 3d 714 (Fla. 4th DCA 2014). As to his claim that his confession to the robbery should have been suppressed because the detective continued to question him after he stated that he wanted to contact a lawyer, we conclude that his comments were equivocal and did not require the detective to cease questioning him. *See Spivey v. State*, 45 So. 3d 51, 54 (Fla. 1st DCA 2010).

CIKLIN and GERBER, JJ., concur.
WARNER, J., dissents with opinion.

WARNER, J., dissenting.

Although I was on the panel affirming the attempted murder conviction of appellant's co-defendant in *Bell v. State,* 152 So. 3d 714 (Fla. 4th DCA 2014), I now disagree with the analysis in that opinion regarding the trial

court's instruction on attempted felony murder, the same issue presented in this case. In *Bell* we held that an instruction on attempted felony murder was not error, even though the state had not charged attempted felony murder in the information. We relied on cases which held that an instruction on felony murder was not error when the state charged premeditated murder. However, because attempted felony murder is now a separate crime in a separate statute, the earlier cases do not control this issue. Because I believe that this is an issue of some importance in how the state charges attempted felony murder, I write to explain the analysis that I think should apply in this case.

Appellant challenges his conviction for attempted first degree murder. He contends that the trial court erred in instructing the jury on attempted felony murder when: the state did not charge him with that crime; the charge of attempted first degree premeditated murder did not include the essential elements of attempted felony murder nor did it cite to the attempted felony murder statute; he objected to the jury instruction at trial; and he was prejudiced in his trial preparation and strategy as a result of the state's failure to specifically charge attempted felony murder. I would hold that the trial court erred in instructing the jury.

Appellant Weatherspoon was one of four co-defendants charged with the November 2008 robbery of a Dunkin' Donuts. During the robbery, co-defendant James Herard shot two people inside the store and one in the parking lot. All four defendants were charged pursuant to a single information containing nineteen total counts. These included attempted first degree murder with a firearm, robbery with a firearm, aggravated assault with a firearm, and possession of a firearm while committing false imprisonment.

The three attempted first degree murder counts (one for each victim) alleged:

> JAMES HERARD and/or CALVIN LEE WEATHERSPOON, IV and/or CHARLES LUKE FAUSTIN and/or THAROD BELL . . . did unlawfully attempt to commit from a premeditated design, effect the death of a human being, kill and murder [each of the three victims], a human being, an offense prohibited by law, and in such attempt did an act toward the commission of such offense by shooting [each of the three victims], but JAMES HERARD and/or CALVIN LEE WEATHERSPOON, IV and/or CHARLES LUKE FAUSTIN and/or THAROD BELL failed in the perpetration or was intercepted or prevented in the execution of said offense, and

during the commission or attempt to commit any offense listed in Florida Statute 775.087(2)(a)1, JAMES HERARD and/or CALVIN LEE WEATHERSPOON, IV and/or CHARLES LUKE FAUSTIN and/or THAROD BELL actually possessed a firearm or destructive device as those terms are defined in section 790.001, Florida Statutes, and further during the course of committing or attempting to commit any offense listed in Florida Statute 775.087(2)(a)1, JAMES HERARD and/or CALVIN LEE WEATHERSPOON, IV and/or CHARLES LUKE FAUSTIN and/or THAROD BELL discharged a firearm or destructive device as defined in section 790.001, Florida Statutes, and, as the result of the discharge, death or great bodily harm was inflicted upon [each of the three victims], contrary to Florida Statutes 777.04(1) and 782.04(1)(a)(2) and 775.087(2)(a)(1) and 775.087(2)(a)(2) and 775.087(2)(a)(3).

Weatherspoon and co-defendant Tharod Bell were tried by the same prosecutors at the same time before separate juries; the juries combined to hear evidence relevant to both cases, and legal issues relevant to both cases were often argued together. When Bell's counsel made his opening argument, he told the jury that the state would have to prove that the defendant had a "conscious intent [that] these people be shot." The state objected and claimed that it could pursue an attempted felony murder theory, to which defense counsel objected that the state had not charged attempted felony murder. All counsel agreed to argue this at a later time.

Subsequently, in opening statements in Weatherspoon's case, the state argued Weatherspoon knew that one of the reasons for the robbery was to give co-defendant Herard a chance to kill people, as part of a "body count competition." Weatherspoon's counsel argued he had no idea Herard intended to kill people during the robbery, largely relying on statements he made to this effect during a police interview.

The issue of whether the state could pursue an attempted felony murder theory was raised again when the parties began to discuss jury instructions for both trials. Bell and Weatherspoon objected to the state's proffered instruction on attempted felony murder, on the grounds that this theory was not pled in the information. They asserted they had first become aware of the state's intention to invoke an attempted felony murder theory during opening statements and argued their clients were prejudiced because they had admitted to the underlying felony (robbery) as part of trial strategy.

3

Ultimately, the trial court determined that it would read, and did read, the following standard attempted felony murder instruction to the jury:

> There are 2 ways in which a person may be convicted of Attempted First Degree Murder. One is known as Premeditated Murder, and the other is known as Felony Murder.
>
> . . .
>
> To prove the crime of Attempted First Degree Felony Murder, the State must prove the following (3) elements beyond a reasonable doubt:
> 1. Calvin Lee Weatherspoon committed or attempted to commit a Robbery.
> 2. While engaged in the commission, attempted commission or escape from the immediate scene of a Robbery, the Defendant *committed or aided or abetted an intentional act that is not an essential element of the Robbery.*
> 3. The intentional act could have but did not cause the death of [the victim].
>
> Robbery is defined by Florida law as the taking of money or other property which may be the subject of larceny from the person or custody of another with the intent to either permanently or temporarily deprive the person or the owner of the money or other property when in the course of the taking there was a use of force, violence, assault, or putting in fear.
>
> In order to convict Calvin Lee Weatherspoon of Attempted Felony Murder, *it is not necessary for the State to prove that he had a premeditated design or intent to kill.*

(Emphasis supplied). *See* Fla. Std. Jury Instr. (Crim.) 6.3.

In closing statements in the Weatherspoon trial, the state relied on both an attempted premeditated murder and an attempted felony murder theory, instructing the jury it could convict under either one. Weatherspoon continued to argue that he could not be convicted unless he knew "or should have known that the shooting was going to happen." The verdict form asked for a general verdict for attempted first degree murder and did not differentiate between attempted premeditated murder and attempted felony murder.

4

During deliberations, the Weatherspoon jury asked for "[c]larification on Attempted 1st deg. murder and Attempted 1st deg. felony murder. *Attempted 1st deg. felony murder is not on the verdict form." The prosecutor commented, "it sounds like they were probably thinking we had to delineate which one[.]" The trial court essentially told the jury to reread and rely on the written instructions. The jury ultimately returned a verdict of guilty on all of the attempted first degree murder counts and all but one of the other counts, none of which are challenged in this appeal. Weatherspoon filed this appeal, and his arguments center on his convictions for attempted first degree murder.

Weatherspoon argues that the trial court erred in instructing the jury on a crime with which he was not charged, i.e., attempted felony murder under section 782.051. While the state concedes that the information did not refer to the statutory section, it argues that an information charging a defendant with first degree premeditated murder also allows the state to pursue a theory of first degree felony murder, and the same logic applies to *attempted* first degree murder. Further, because the state claims there is no material difference between attempted felony murder under section 782.051, Florida Statutes, and the old common law crime, the state argues that the information's citation to the statutes for attempt and for felony murder was sufficient to place Weatherspoon on notice of its intent to pursue attempted felony murder. Contrary to the state's contention, I conclude that case law which holds that a charge of first degree murder includes both premeditated murder and felony murder does not apply to attempted felony murder, which constitutes a separate statutory crime containing elements not included in the charge of felony murder.

Article I § 16 of the Florida Constitution provides: "In all criminal prosecutions the accused shall, upon demand, be informed of the nature and cause of the accusation, and shall be furnished a copy of the charges[.]" "Thus, to apprise the accused of the specific charges against him, an information or indictment must contain all facts essential to the 'offence intended to be punished.'" *Insko v. State*, 969 So. 2d 992, 995 (Fla. 2007) (quoting *United States v. Carll*, 105 U.S. 611, 612-13 (1881)). However, due to Florida's liberal criminal discovery rules, the Florida Supreme Court has held that "an information is legally sufficient if it expresses the elements of the offense charged in such a way that the accused is neither misled nor embarrassed in the preparation of his defense nor exposed to double jeopardy." *State v. Dilworth*, 397 So. 2d 292, 294 (Fla. 1981).

Florida Rule of Criminal Procedure 3.140(d)(1) requires that an information allege all "essential facts" of each crime charged as well as the

statutory citation for each crime, although failure to cite to the statute cannot be a ground for dismissal of the information or indictment or reversal of a conviction "if the error or omission did not mislead the defendant to the defendant's prejudice." Fla. R. Crim. P. 3.140(d)(1). To fail to charge the essential elements of a crime is a violation of due process:

> Due process of law requires the State to allege every essential element when charging a violation of law to provide the accused with sufficient notice of the allegations against him. Art. I, § 9, Fla. Const.; *M.F. v. State*, 583 So. 2d 1383, 1386-87 (Fla. 1991). *There is a denial of due process when there is a conviction on a charge not made in the information or indictment. See Gray*, 435 So. 2d at 818; *see also Thornhill v. Alabama*, 310 U.S. 88, 60 S. Ct. 736, 84 L. Ed. 1093 (1940); *De Jonge v. Oregon*, 299 U.S. 353, 57 S. Ct. 255, 81 L. Ed. 278 (1937). For an information to sufficiently charge a crime it must follow the statute, clearly charge each of the essential elements, and sufficiently advise the accused of the specific crime with which he is charged. *See Rosin v. Anderson*, 155 Fla. 673, 21 So. 2d 143, 144 (1945). Generally the test for granting relief based on a defect in the information is actual prejudice to the fairness of the trial. *See Gray*, 435 So. 2d at 818 (citing *Lackos v. State*, 339 So. 2d 217 (Fla.1976)).

*Price v. State,* 995 So. 2d 401, 404 (Fla. 2008) (emphasis supplied). Although a charge may be sufficient where the essential elements have been omitted but the correct statute was cited, *see Dubois v. State*, 520 So. 2d 260, 265 (Fla. 1988), "an information is fundamentally defective where it fails to cite a specific section *and* totally omits an essential element of the crime." *Figueroa v. State*, 84 So. 3d 1158, 1161 (Fla. 2d DCA 2012) (emphasis supplied).

The information in this case charged attempted first degree premeditated murder. It did not contain the essential elements of attempted felony murder and did not contain a citation to section 782.051, the attempted felony murder statute. Thus, the information was fundamentally defective in charging attempted felony murder.

The state argues, however, that it need not charge attempted felony murder in order to be entitled to an instruction on it, because this charge is subsumed within the attempted premeditated murder charge, relying on case law interpreting the first degree murder statutes. Those cases, however, are inapplicable to attempted felony murder.

6

A long line of supreme court cases has held that "the state does not have to charge felony murder in the indictment but may prosecute the charge of first-degree murder under a theory of felony murder when the indictment charges premeditated murder." *O'Callaghan v. State*, 429 So. 2d 691, 695 (Fla. 1983) (quoting *State v. Pinder*, 375 So. 2d 836, 839 (Fla. 1979)). The logic of this holding derives from the court's analysis of the definition of first degree murder in the statute, which at one time contained both premeditated murder and felony murder in the same sentence:

> The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery or burglary, shall be murder in the first degree, and shall be punishable with death.

*Sloan v. State*, 69 So. 871, 872 (Fla. 1915) (quoting section 3205, General Statutes of 1906). The court adopted the position of the majority of states that a charge of premeditated murder *under this statute* was sufficient to charge both premeditated and felony murder, "because the perpetration, or attempt to perpetrate, any of said felonies [enumerated in the statute], during which a homicide is committed, stands in lieu of and is the legal equivalent of premeditation[.]" *Killen v. State*, 92 So. 2d 825, 828 (Fla. 1957). The current murder statute similarly defines first degree murder as either premeditated or felony murder within the same subsection. *See* § 782.04(1)(a)1-2., Fla. Stat. (2008).

The logic of *Sloan* and *Killen* applied to *attempted* felony murder until *State v. Gray*, 654 So. 2d 552 (Fla. 1995), which held that "the crime of attempted felony murder is logically impossible" because "a conviction for the offense of attempt requires proof of the specific intent to commit the underlying crime." *Id.* at 553. *Gray* adopted Justice Overton's dissent in *Amlotte v. State*, 456 So. 2d 448, 450-51 (Fla. 1984), where he concluded that:

> [T]he crime of felony murder is based upon a legal fiction which implies malice aforethought from the actor's intent to commit the underlying felony. Thus, whenever a person is killed during the commission of a felony, the felon is said to have had the intent to bring about the death even if the killing was unintended. This doctrine has been extended to impute intent for deaths caused by the acts of co-felons, *see, e.g., Mills v. State*, 407 So. 2d 218 (Fla. 3d DCA 1981), and police, *see, e.g., State v. Wright*, 379 So. 2d 96 (Fla. 1979), during the

7

perpetration of certain felonies. *Further extension of the felony murder doctrine so as to make intent irrelevant for purposes of the attempt crime is illogical and without basis in law.*

(Emphasis supplied). By rejecting a further extension of these legal fictions, upon which *Sloan* and its progeny are based, *Gray* also necessarily meant that common law attempted felony murder could not be merely a sub-category of statutory attempted premeditated murder.

In reaction to *Gray*, the Florida Legislature enacted section 782.051, Florida Statutes, which made attempted felony murder a separate crime with the following elements:

> Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids, or abets an intentional act that is not an essential element of the felony and that could, but does not, cause the death of another commits a felony of the first degree[.]

§ 782.051(1), Fla. Stat. (2008). Interestingly, section 782.04(3), referred to in the statute, is not the provision for first degree murder, including felony murder. Instead, section 782.04(3) states the essential elements of one form of murder in the *second* degree, although the list of enumerated felonies is identical to the list in section 784.04(1)(b), the felony murder statute. Thus, it cannot be argued that the Legislature considered section 782.051 to be simply a subset of first degree murder under section 782.04(1).

Regarding the attempted felony murder statute, the supreme court has explained: "[I]n order to avoid the problems set forth in *Gray*, the Legislature added an additional element to the crime—that the defendant commit an 'intentional act that is not an essential element of the felony and that could, but does not, cause the death of another.'" *Milton v. State*, 39 Fla. L. Weekly S708, *1 (Fla. Nov. 20, 2014) (holding that the "act of discharging a firearm can[not] satisfy the 'intentional act' element of attempted felony murder when the underlying felony is attempted murder and the same individuals are the victims of both crimes"); *see also Battle v. State*, 911 So. 2d 85, 89-90 (Fla. 2005) (holding that "failing to include the phrase 'that was not an essential element of the felony' in the attempted felony murder jury instructions was erroneous because an essential element of the crime charged was omitted[,]" but finding that this element was not in dispute and therefore the omission was not fundamental error that could be raised for the first time on appeal).

8

As attempted felony murder is now a separate crime under a separate statute and with different elements than felony murder, the rationale that the intent to commit the felony can substitute for the intent to commit premeditated murder *under the murder statute* has no application. Since *Bell v. State*, 152 So. 3d 714, 717-18 (Fla. 4th DCA 2014), and *Dempsey v. State*, 72 So. 3d 258, 260–61 (Fla. 4th DCA 2011), relied on extending the rule emanating from *Sloan* and its progeny to the current attempted felony murder statute, I would recede from the reasoning in both cases.

In this case, the information charged Weatherspoon only with attempted first degree premeditated murder. It did not charge him with attempted felony murder under section 782.051. In the counts relating to the attempted murder of the victims, the information did not allege any of the essential facts or elements necessary to charge the crime of attempted felony murder. Specifically, the counts for attempted murder failed to allege either the commission of the underlying felony (robbery), or that Weatherspoon committed, aided, or abetted an intentional act that was not an essential element of the underlying felony. Although the information did cite the attempt statute, section 777.04(1), and the felony murder statute, section 782.04(1)(a)2., this would, at best, charge the non-existent version of felony murder that was invalidated in *Gray*. Neither of these citations were to the correct felony murder statute, section 782.051, which establishes a new, separate crime with additional elements not found in either of these statutes and not alleged in the information. Given the information's failure to cite the correct statute, its failure allege the required statutory elements, and its reference to a "premeditated design," appellant rightfully understood that the information only charged him with attempted premeditated murder.

Therefore, I conclude that it was error for the trial court, over the strenuous objection of the appellant, to instruct the jury on a crime not charged. Moreover, the state relied on the felony murder theory in its closing. Thus, even without the objection, the giving of the instruction on a crime not charged would be fundamental error. *See State v. Weaver*, 957 So. 2d 586, 589 (Fla. 2007) (no fundamental error occurred where jury was instructed on an element of a crime not charged but state never relied on uncharged element).

Because the trial court did not submit a verdict form to the jury that differentiated between attempted felony murder and attempted premeditated murder, we cannot tell if the jury relied upon the instruction on the uncharged crime to find appellant guilty of attempted murder. An analogous situation arose after *Gray* abolished the common law crime of attempted felony murder. In *Valentine v. State*, 688 So. 2d 313 (Fla. 1996),

9

the Florida Supreme Court vacated a conviction for attempted first degree murder based on *Gray*, finding that the jury had been instructed on both attempted felony murder and attempted premeditated murder, and it was impossible to tell on which theory the jury had relied. *Id.* at 317. As attempted felony murder was no longer a crime pursuant to *Gray*, the supreme court determined that "the jury may have relied on this legally unsupportable theory[.]" *Id.*; *see generally Fitzpatrick v. State*, 859 So. 2d 486, 490-91 (Fla. 2003) ("[A] general verdict is invalid when it rests on multiple bases, one of which is legally inadequate[,] . . . and it is impossible to tell which ground the jury selected.").

The state relies on *White v. State*, 973 So. 2d 638 (Fla. 4th DCA 2008), in which White argued: (1) he had been convicted of a non-existent crime, attempted felony murder, because this crime had been abolished in *Gray*; and (2) his due process rights were violated because he was convicted of a crime not charged in the information. *Id.* at 639, 641. I find *White* distinguishable. In *White*, the information provided:

> RICHARD ALLEN WHITE … did unlawfully attempt to commit murder in the first degree in that Richard Allen White, while engaged in the perpetration of or the attempted perpetration of the crime of Robbery, did cause great bodily harm to Glen Moore, a human being, by intentionally kicking and striking him repeatedly which could have caused the death of the said Glen Moore, contrary to F.S. 782.04(1)(a), F.S. 777.011, F.S. 777.04(1) and F.S. 812.13(2)(c).

*Id.* at 640. The information did not cite the post-*Gray* attempted felony murder statute, section 782.051. It did, however, allege the commission of robbery in the attempted murder count, and it further alleged an intentional act which was not an essential element of the crime of robbery. Thus, even though the information did not cite to the attempted felony murder statute, all of the essential elements of the crime were alleged. Furthermore, White never raised an objection to the charging document or to the jury instructions at trial. *Id.* at 640. Both the prosecution and the defense in *White* tried the case as an attempted premeditated murder case, and the court instructed the jury on attempted premeditated murder. *Id.* at 641. We concluded that no fundamental error occurred because any defect in the information did not prevent White from a defense at trial. *Id.*

In contrast, as noted above, the information in this case did not allege or reference the robbery at all in the attempted premeditated murder counts, unlike the charge in *White.* And unlike *White,* Weatherspoon raised the failure to charge attempted felony murder in the trial court,

10

rather than relying on an assertion of unpreserved fundamental error. Further, and unlike *White*, the prosecution did try this case under a theory of attempted felony murder, in addition to a premeditation theory. Weatherspoon's and Bell's counsel asserted that they had been prejudiced by the state's late assertion of the attempted felony murder theory, because they had chosen to admit to the underlying felonies (robbery), which essentially guaranteed a conviction for attempted felony murder. *See Dilworth*, 397 So. 2d at 294 ("an information is legally sufficient if it expresses the elements of the offense charged in such a way that the accused is neither misled nor embarrassed in the preparation of his defense nor exposed to double jeopardy"); Fla. R. Crim. P. 3.140(d)(1) (error in citation to statute shall not invalidate conviction if it "did not mislead the defendant to the defendant's prejudice"). Questions from the jury during deliberations also indicate the jury struggled with the issue of attempted felony murder versus attempted premeditated murder. Thus, instructing the jury on an uncharged crime constituted reversible error.

This preserved error should require reversal for a new trial on attempted first degree murder. I therefore dissent from that portion of the majority opinion relying on *Bell*.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***